[Cite as *State v. Simmons*, 2017-Ohio-183.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   104080

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## TIASHIA SIMMONS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-596463-A

**BEFORE:**  Boyle, J., Kilbane, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:**   January 19, 2017

**ATTORNEY FOR APPELLANT**

Robert A. Dixon
4403 St. Clair Avenue
Cleveland, Ohio   44103


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:   Steven McIntosh
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, J.:

**{¶1}** Defendant-appellant, Tiashia Simmons, appeals her conviction, raising the following two assignments of error:

I. The appellant was denied due process of law and a fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution due to admission of an irrelevant but highly prejudicial police body camera recording.

II. The appellant was denied effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution due to the failure of counsel to object to the court placing the burden of proof on her to prove self-defense.

**{¶2}** Finding no merit to the appeal, we affirm.

## A. Procedural History and Facts

**{¶3}** In June 2015, Simmons was indicted on the following five counts: attempted murder, two counts of felonious assault, discharge of firearm on or near prohibited premises, and tampering with evidence. The first three counts carried a one- and three-year firearm specification. The charges arose in connection with Simmons's shooting of Kevin Bebee on June 3, 2015. Simmons pleaded not guilty to the charges, and the matter proceeded to a jury trial.

**{¶4}** The state's evidence at trial revealed that around 7:30 p.m. in the evening on June 3, 2015, Simmons drove to East 149th Street where she fired several shots at Bebee while he was seated in his van and driving home. One of the shots entered the van and hit Bebee on his left side, causing severe injuries.

**{¶5}** Aside from Bebee's testimony, who expressly identified Simmons as the

shooter, the state presented two other eyewitnesses — Betty Harris and Linda Coleman, both of whom were outside at the time of the shooting and testified that Simmons shot at Bebee's van while he was driving down the street. Both witnesses testified that Simmons initiated the shooting. Coleman testified that she did not see Bebee holding "anything" out of his van window; nor did she observe him firing any gunshots. Harris testified that, upon seeing Bebee coming down the street in his van, she observed Simmons get out of her car, holding her gun, and then ultimately firing shots. After Simmons fired the first shot, Harris ran upstairs to get her daughter, Jasmine Harris. Jasmine observed Simmons walking back to her car with a gun in her hand and then drive off.

{¶6} EMS and police arrived on the scene within minutes following the 911 call. The police recovered five 9 mm shell casings in the street. The eyewitnesses immediately informed police that Simmons was the shooter. The police drove to Simmons's house where they found her sitting outside on her porch. Simmons told the police that she had been home all day and denied being at East 149th Street. Simmons further acknowledged owning a firearm and having a carrying concealed weapon license, at which time the police arrested and detained Simmons in the back of a police cruiser. Simmons granted the police consent to search her house for the firearm, which they were unable to locate, but did recover 9 mm bullets in Simmons's bedroom. The police also submitted a gunshot residue test of Simmons's hands that resulted in a positive finding of gunshot residue. The next day, Simmons told the police that she had left her house the

day before, but only to go to her friend's house where she had been drinking since approximately 3:00 p.m. that day.

{¶7} At trial, however, Simmons admitted to shooting Bebee. According to Simmons's testimony, she acted in self-defense. She fired her gun only after seeing the barrel of Bebee's gun directed at her. She further explained that she had driven over to East 149th Street to pick up her boyfriend, Daryl Jackson, before getting her children from daycare. Simmons explained that she lied to the police because she relied on the advice of Jackson and feared going to jail.

{¶8} Jackson testified on Simmons's behalf at trial, indicating that he and Bebee sold drugs together and that the state's witnesses, who included his aunt (Harris) and cousin (Jasmine), were not telling the truth because they were protecting Bebee who they relied on financially. Jackson further acknowledged that he told Simmons to deny everything and not to cooperate with the police. Jackson further admitted to retrieving Simmons's firearm and disposing of it before the police arrived at her home.

{¶9} At the end of the state's case, the trial court granted the defendant's Crim.R. 29 motion for acquittal as to the tampering with evidence count.

{¶10} The jury ultimately returned a not guilty verdict on the attempted murder count but guilty on the felonious assault and discharge of a firearm on or near prohibited premises. At sentencing, the trial court merged the offenses as allied and the state elected to proceed on felonious assault in violation of R.C. 2903.11(A)(1). Simmons was sentenced to a total of six years in prison.

**{¶11}** This appeal followed.

### B. Admission of Evidence

**{¶12}** In her first assignment of error, Simmons argues that the trial court erred in allowing the state to play the police body-camera recording that captured her statements while seated in the back of the police cruiser. She contends that the evidence was irrelevant and highly prejudicial. According to Simmons, the admission of this evidence caused the jury to decide the case on an "improper basis," and therefore her conviction must be reversed. We disagree.

**{¶13}** Evid.R. 402 provides that "[e]vidence which is not relevant is not admissible." Evid.R. 403(A) states that a judge must exclude evidence, regardless of its relevance, if "its probative value is substantially outweighed by the danger of unfair prejudice." *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 112.

**{¶14}** Simmons acknowledges that defense counsel did not object to all portions of the body-camera recording presented at trial. She points, however, to that portion of the recording where she is heard saying, "I hate police," which defense counsel objected to as being irrelevant and prejudicial.

**{¶15}** Even if we agreed that this statement should have been redacted from the recording and not admitted, we find that any error is harmless. An error is harmless if it does not affect a substantial right of an accused. Crim.R. 52(A). "The accused, therefore, has a constitutional guarantee to a trial free from prejudicial error, not

necessarily one free of all error." *State v. Jones*, 8th Dist. Cuyahoga No. 101514, 2015-Ohio-2151, ¶ 58, citing *State v. Fears*, 8th Dist. Cuyahoga No. 89989, 2008-Ohio-2661. And where there is no reasonable possibility that the unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal. *Fears* at ¶ 14, citing *State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976), paragraph three of the syllabus, *vacated on other grounds*, *Lytle v. Ohio*, 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154 (1978); *see also State v. Brown*, 65 Ohio St.3d 483, 485, 605 N.E.2d 46 (1992).

**{¶16}** We do not agree that Simmons's single derogatory statement regarding her dislike for the police contributed to her conviction. From our review of the recording, Simmons makes this statement while seated in the back of the police car, agitated and frustrated with the length of time the police have searched her house. Aside from the statement being overshadowed by Simmons's clear fear of going to jail, her repeated claims of innocence, and the fact that she has never gone to jail before, we find no basis to conclude that this single statement contributed to Simmons's convictions. Notably, the jury acquitted Simmons of the attempted murder charge. And to the extent that the jury did not find Simmons's self-defense claim persuasive, the state's eyewitnesses overwhelmingly negated Simmons's later asserted claim of self-defense. Aside from Simmons's self-serving testimony at trial as to self-defense, no other evidence corroborated her claim of Bebee having a gun or firing shots. Accordingly, we find that the error complained of was harmless beyond a reasonable doubt.

**{¶17}** The first assignment of error is overruled.

## C.   Ineffective Assistance of Counsel

**{¶18}** In her second assignment of error, Simmons argues that her trial counsel was ineffective for failing "to object to the court placing the burden of proof on her to prove self-defense."   Although Simmons recognizes that Ohio law places the burden on the defendant to prove self-defense, she nonetheless argues that her trial counsel should have challenged Ohio's statutory requirement, namely, R.C. 2901.05(A), as being unconstitutional.   Relying on the United States Supreme Court's decision in *Dist. of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), Simmons argues that placing the burden on the defendant to prove self-defense contravenes the Second Amendment.   According to Simmons, the Second Amendment "proves a presumptive right to self-defense" and that the state should bear the burden "to prove lack of self-defense."

**{¶19}** Simmons's argument, however, has no merit.

**{¶20}** To establish ineffective assistance of counsel, a defendant must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different.   *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

**{¶21}** Simmons's trial counsel's decision not to challenge the constitutionality of R.C. 2901.05(A) falls within the realm of competent representation and cannot be characterized as deficient performance because such an objection would have been futile. First, although it predates the decision in *Heller*, the United States Supreme Court in *Martin v. Ohio*, 480 U.S. 228, 233-234, 107 S.Ct. 1098, 94 L.Ed.2d 67 (1987), upheld the constitutionality of R.C. 2901.05(A), which we are bound to follow as an inferior court. *State v. Loyed,* 8th Dist. Cuyahoga No. 83075, 2004-Ohio-3961, ¶ 33. Second, this court has consistently rejected the exact argument advanced by Simmons, finding that *Heller* does not support a different result. *State v. Porter*, 8th Dist. Cuyahoga No. 102257, 2016-Ohio-1115, ¶ 45; *State v. Betliskey*, 8th Dist. Cuyahoga No. 101330, 2015-Ohio-1821, ¶ 39; *State v. Hudson*, 8th Dist. Cuyahoga No. 96986, 2012-Ohio-1345, ¶ 23; *State v. Warmus*, 197 Ohio App.3d 383, 2011-Ohio-5827, ¶ 42-47 (8th Dist.). As we have previously explained:

> In *Heller*, the Court held that the Second Amendment protects an individual's right to possess a firearm in the home for the purpose of self-defense. 554 U.S. at 635-636. In doing so, the Court recognized that self-defense is a "central component" to the right to bear arms. *Id*. at 599. While *Heller* recognizes a right to self-defense, "nothing in Heller purports to alter the way the states have defined self-defense." *Warmus* at ¶ 47.

*Hudson* at ¶ 24.

**{¶22}** Accordingly, for these reasons, we overrule Simmons's second assignment of error.

**{¶23}** Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, JUDGE

MARY EILEEN KILBANE, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR